1

2

3

4

5

6

7

8           UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FELICIANA CASTRO,                    No.  2:24-cv-0983-SCR

12              Plaintiff,

13        v.                              **ORDER**

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under

20   Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that

21   follow, Plaintiff's motion for summary judgment will be DENIED, and the Commissioner's

22   cross-motion for summary judgment will be GRANTED.

23                          I.  PROCEDURAL BACKGROUND

24        Plaintiff applied for SSI on October 13, 2015, alleging a disability onset date of February

25   3, 1997.  Administrative Record ("AR") 1653.[2]  The application was disapproved initially on

26   _____

[1]  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); *Washington State Dept.
27   of Social and Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 375 (2003)
     ("Title XVI of the Act, § 1381 *et seq.*, is the [SSI] scheme of benefits for aged, blind, or disabled
28   individuals, including children, whose income and assets fall below specified levels . . .").
[2]  The AR is electronically filed at ECF No. 10 (AR 1 to AR 2037).

1    November 5, 2015, and on reconsideration on July 13, 2016.  AR 1653.  On February 12, 2018,

2    ALJ Vincent Misenti presided over the hearing on plaintiff's challenge to the disapprovals.  AR

3    47-86 (transcript).  Plaintiff appeared with Jenna Abel as counsel and testified at the hearing.  AR

4    47, 51.  Vocational Expert ("VE") Laurianne Hyatt also testified.  AR 47, 80.

5         On June 27, 2018, the ALJ issued an unfavorable decision, finding plaintiff "not disabled"

6    under the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 26-38 (decision), 39-44 (exhibit list).  On June 3,

7    2019, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the

8    final decision of the Commissioner.  AR 6-8 (decision), 9-10 (exhibit list).

9         In July 2019, Plaintiff filed an action in this Court, *Castro v. Comm'r of Social Security*,

10   Case No. 2:19-cv-1424-KJN ("*Castro I*"), challenging the denial of her application in July 2019.

11   On May 20, 2020, pursuant to the parties' stipulation, the Court remanded the matter for further

12   ALJ proceedings.  AR 1753-54.

13        ALJ Misenti presided over a new hearing on February 16, 2023, at which Plaintiff again

14   testified.  AR 1684, 1688.  VE Mary Jesko and Frank Castro, Plaintiff's father, also testified.  AR

15   1707, 1714.

16        On April 4, 2023, the ALJ issued an unfavorable decision, again finding plaintiff "not

17   disabled" under the Act.  AR 1653-76 (decision), 1677-83 (exhibit list).  On July 25, 2023, the

18   Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final

19   decision of the Commissioner.  AR 1643-46 (decision), 1647-48 (exhibit list).

20        Plaintiff filed this action on April 1, 2024.  ECF No. 1.  The parties consented to the

21   jurisdiction of a magistrate judge.  ECF No. 9.  Cross-motions for summary judgment, based

22   upon the AR, have been briefed.  ECF Nos. 17 (Plaintiff's summary judgment motion), 19

23   (Commissioner's summary judgment motion).

24                              II.  FACTUAL BACKGROUND

25        Plaintiff was born in 1997, and accordingly was, at 18 years old, a younger individual

26   under the regulations as of the application date.  AR 1675; *see* 20 C.F.R § 416.963(c).  Plaintiff

27   has a high school education and can communicate in English.  AR 238, 240.  She has not reported

28   any prior employment.  AR 239-40.  Asserted conditions include neck and back problems, issues

1    with walking and sight, learning and sleeping problems, anxiety, kidney and heart problems,

2    scoliosis, depression, and alcohol syndrome.  AR 239.

3    ## III.  LEGAL STANDARDS

4        The Commissioner's decision that a claimant is not disabled will be upheld "if it is

5    supported by substantial evidence and if the Commissioner applied the correct legal standards."

6    *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

7    Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  *Andrews*

8    *v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

9        Substantial evidence is "more than a mere scintilla," but "may be less than a

10   preponderance."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant

11   evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

12   *Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from

13   the record can constitute substantial evidence, only those 'reasonably drawn from the record' will

14   suffice."  *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

15       Although this Court cannot substitute its discretion for that of the Commissioner, the court

16   nonetheless must review the record as a whole, "weighing both the evidence that supports and the

17   evidence that detracts from the [Commissioner's] conclusion."  *Desrosiers v. Secretary of HHS*,

18   846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The

19   court must consider both evidence that supports and evidence that detracts from the ALJ's

20   conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

21       "The ALJ is responsible for determining credibility, resolving conflicts in medical

22   testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th

23   Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

24   which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*,

25   278 F.3d 947, 954 (9th Cir. 2002).  However, the Court may review only the reasons stated by the

26   ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  *Orn*

27   *v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.

28   2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

1  evidence that the ALJ did not discuss").

2      The Court will not reverse the Commissioner's decision if it is based on harmless error,

3  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

4  ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.

5  2006) (quoting *Stout v. Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

6                                   IV.  RELEVANT LAW

7      SSI is available for eligible individuals who are "disabled." 42 U.S.C. § 1381a.  An

8  individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any

9  medically determinable physical or mental impairment which can be expected to result in death or

10 which has lasted or can be expected to last for a continuous period of not less than twelve

11 months." 42 U.S.C. §1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

12     The Commissioner uses a five-step sequential evaluation process to determine whether an

13 applicant is disabled and entitled to benefits. 20 C.F.R. § 416.920(a)(4); *Barnhart v. Thomas*, 540

14 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine

15 disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

16          Step one: Is the claimant engaging in substantial gainful activity?  If
17          so, the claimant is not disabled.  If not, proceed to step two.

18 20 C.F.R. § 416.920(a)(4)(i), (b).

19          Step two: Does the claimant have a "severe" impairment?  If so,
            proceed to step three.  If not, the claimant is not disabled.

20 *Id.*, § 416.920(a)(4)(ii), (c).

21          Step three: Does the claimant's impairment or combination of
22          impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
            Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to
23          step four.

24 *Id.*, § 416.920(a)(4)(iii), (d).

25          Step four: Does the claimant's residual functional capacity make him
            capable of performing past work?  If so, the claimant is not disabled.
26          If not, proceed to step five.

27 *Id.*, § 416.920(a)(4)(iv), (e), (f).

28 ////

                                        4

1  | Step five: Does the claimant have the residual functional capacity
2  | perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

3  | *Id.*, § 416.920(a)(4)(v), (g).

4  | The claimant bears the burden of proof in the first four steps of the sequential evaluation

5  | process.  20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or

6  | disabled"); *Bowen*, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis,

7  | the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can

8  | engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698

9  | F.3d 1153, 1161 (9th Cir. 2012).

10 | V.  THE ALJ's DECISION

11 | The ALJ made the following findings:

12 | 1. The claimant has not engaged in substantial gainful activity since October 13, 2015, the application date (20 CFR 416.971 *et seq.*).

13 |
14 | 2. The claimant has the following severe impairments: lumbar degenerative disc disease with idiopathic scoliosis; intellectual disorder (20 CFR 416.920(c)).

15 |
16 | 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

17 |

18 | 4. After careful consideration of the entire record…the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally climb ramps and stairs, and occasionally balance, stoop; kneel, crouch, and crawl.  She cannot climb ladders and scaffolds.  She is precluded from working around unprotected heights and must avoid concentrated exposure to moving mechanical parts.  The claimant must avoid concentrated exposure to fumes, dusts, odors, gases, poorly ventilated areas, and chemicals.  She is limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks, using judgment limited to simple work-related decisions.  She can interact with the public frequently and is able to tolerate occasional changes in a routine work setting.  She is limited to understanding and carrying out simple one to two step instructions and cannot make change.

25 | 5. The claimant has no past relevant work (20 CFR 416.965).

26 |
27 | 6. The claimant was born on February 3, 1997 and was 18 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

28 |

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 13, 2015, the date the application was filed (20 CFR 416.920(g)).

AR 1655-76.  As noted, the ALJ concluded that plaintiff was "not disabled" under the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 1676.

## VI.  ANALYSIS

### A.  The ALJ Did Not Materially Err in Finding Plaintiff's Condition Did Not Meet Step Three Requirements

1.  <u>Appendix Listing and Definitions</u>

Appendix 1 to Subpart P of the regulations ("Appendix 1") provides a single definition for intellectual disorders aside from neurocognitive, neurodevelopmental, and autism spectrum disorders.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(B)(4)(c).  Intellectual disorders entail "significantly subaverage general intellectual functioning [and] significant deficits in current adaptive functioning" manifesting before the age of 22.  *Id.* at § 12.00(B)(4)(a).

There are two ways to demonstrate an intellectual disorder.  First, under Paragraph A of § 12.05 of Appendix 1, by showing:

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2.  Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing)[.]

Adaptive functioning refers to a claimant's ability to "learn and use conceptual, social, and practical skills in dealing with common life demands," both "at home and in the community, alone or among others."  *Id.* at § 12.00(H)(3)(a).

6

1    An intellectual disorder may also exist under the criteria of Paragraph B of § 12.05 of

2    Appendix 1:

3       1.  Significantly subaverage general intellectual functioning evidenced by a or b:

4          a. A full scale (or comparable) IQ score of 70 or below on an individually
administered standardized test of general intelligence; or

5          b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or
performance IQ score (or comparable part score) of 70 or below on an individually

6          administered standardized test of general intelligence; and

7       2.  Significant deficits in adaptive functioning currently manifested by **extreme
limitation of one**, or **marked limitation of two**, of the following areas of mental

8          functioning:

9          a. Understand, remember, or apply information (see 12.00E1); or

10         b. Interact with others (see 12.00E2); or
      c. Concentrate, persist, or maintain pace (see 12.00E3); or

11         d. Adapt or manage oneself (see 12.00E4)[.]

12   (Emphasis added.)  In other words, to evaluate deficits in adaptive functioning under Paragraph

13   B, an ALJ may assess plaintiff's performance in four broad areas of mental functioning.  *Id.* at §

14   12.05(B)(2).  These are the ability to understand, remember, or apply information; the ability to

15   interact with others; concentration, persistence, and ability to maintain pace; and the ability to

16   adapt and manage oneself.  *Id.*[3]

17      An ALJ rates limitations in each area of adaptive functioning on a five-point scale, based

18   on whether the claimant can function in that area "independently, appropriately, effectively, and

19   on a sustained basis" and to what extent.  *Id.* at § 12.00(F)(2).  The most severe limitation is

20   "extreme," when a claimant cannot so function in that area, followed by "marked," where a

21   claimant's ability to do so is "seriously limited."  *Id.* at §§ 12.00(F)(2)(d)-(e).  The medium

22   limitation rating, "moderate," applies when the claimant's ability to function in that area is "fair."

23   *Id.* at § 12.00(F)(2)(c).

24      As already indicated, a claimant has adequate deficits in adaptive functioning if the ALJ

25   finds either an extreme limitation in one of the four areas or marked limitations in two.  *Id.* at §

26   12.05(B)(2).  Evidence as to how to rate each area of functioning includes medical sources,

27   

28   [3]  Both Paragraph A and Paragraph B also require that the disorder began prior to age 22, an
element that is not contested in Plaintiff's case.

1  standardized tests, third-party information like reports from family or friends, school records,

2  employer or supervisor reports, and the claimant's statements about how they handle daily

3  activities. *Id.* at § 12.00(H)(3)(b).

4         The ability to engage in daily activities does not always mean the claimant lacks deficits

5  in adaptive functioning, and an ALJ must consider all activities and performance thereof. *Id.* at §

6  12.00(H)(3)(d)(i).  Because the relevant question is whether the claimant can conduct daily

7  activities "independently, appropriately, effectively, and on a sustained basis," the ALJ must

8  consider "the kind, extent, and frequency of help" the claimant receives in performing them. *Id.*

9  at § 12.00(H)(3)(d)(ii).

10        3.  Holding

11        The ALJ found that Plaintiff's medical history and daily activities did not demonstrate the

12  deficits in adaptive functioning necessary for a finding of disability under Paragraph B.  AR 1660.

13  Plaintiff's verbal IQ score in 2006 was 72 while her cognitive abilities were "low average."  AR

14  1660.[4]  Plaintiff's 2013 Individualized Education Program ("IEP") reflected 50% enrollment in

15  general education.  AR 1660 (citing AR 379).  Dr. Robert Achtel noted mild developmental delay

16  in March 2014 and "somewhat delayed" development in October 2014.  AR 1661 (citing AR 566,

17  570).

18        An August 2014 IEP stated that Plaintiff needed to be outside of the classroom 22% of the

19  time, was well-groomed, followed verbal directions with 90% accuracy, and obtained information

20  through her phone with 95% accuracy.  AR 1661 (citing AR 519, 529).  In September 2014, as a

21  high school senior, Plaintiff was social, had a boyfriend, did well in school, and partook in

22  extracurricular activities like cross country and choir.  AR 1661 (citing AR 1065).  As to travel,

23  Dr. Michael Ko noted in December 2022 that Plaintiff went to Disney on one weekend, albeit

24  with frequent stops to stretch, and would go to Los Angeles the next.  AR 1662 (citing AR 1985).

25

26

27

28

[4]  Despite the fact that the ALJ noted an IQ score that would not satisfy the listing criteria, there is other evidence in the record—including a finding from the earlier 2018 ALJ decision—that Plaintiff's full scale IQ score was below 70.  AR 30 (citing AR 476).  The record thus shows that the "[s]ignificantly subaverage general intellectual functioning" prong is satisfied.

8

From late 2015 to February 2023, Dr. Michael Shi, Dr. Anh Le, Dr. Kusum Lata, Dr. Zhang Lan, Dr. Nasika Subrahmanyam, Dr. Ali Syed, and Dr. Hala Saleem, among others, observed normal insight and judgment, normal alertness and orientation in all spheres, normal memory and concentration, and an ability to respond to questions normally.  AR 1661-62 (citing AR 1226, 1234, 1285, 1314, 1339, 1443, 1489, 1529, 1566, 1614-21, 1627, 1630, 1885, 1900, 1923, 1935, 1951, 1953, 1985, 2007, 2013-14, 2017).  Dr. Saleem also noted a linear thought process and normal perception and thought content, but poor memory, in March 2017.  AR 1661 (citing AR 1619).

The ALJ then summarized relevant activity testimony from both hearings.  AR 1662.  In 2018, Plaintiff testified that she received supportive services like a recorder, a note taker, and extra test time while attending junior college.  AR 1662.  Despite these tools and being in a special program, she failed English twice, got a C the third time, withdrew from a different class, and earned a D on another.  AR 1662.  Aside from providing her address during the hearing, however, she testified that she could competently read, use a computer, cook on the stove, and do other chores.  AR 1662.  She went out with her friends to engage in various activities and could attend appointments alone, provided someone else drives her.  AR 1662.  She did work at a thrift store until 2017 but found it difficult, particularly using the register.  AR 1662.

In 2023, Plaintiff testified that she dropped out of community college because she found it too hard, even with accommodations.  AR 1662.  Regular activities included walking her dogs, coloring, watching television, painting, playing board games, reading, and visiting social media.  AR 1662.  She would bowl or swim with her family, go to church, eat out, go shopping with friends, visit her aunt five hours away, and go on various trips out of town.  AR 1662.  She could still do chores and cook simple meals, and could recall her treatment history when asked at the hearing.  AR 1662.  However, because she cannot make change, handle cash, or stand or sit for a long time, she has not tried finding another job.  AR 1662.

Based on this evidence, the ALJ rated Plaintiff's ability to understand, remember, or apply information as moderately limited.  AR 1662.  She admitted she only has difficulty with difficult instructions rather than easy ones, to the point that difficult oral instructions need to be repeated.

9

1    AR 1662.  Her August 2014 IEP indicated she could accurately follow 90% of all verbal

2    directions.  AR 1662-63.  Various medical notes said she was always alert and oriented, whereas

3    she toggled between having poor and fair memory.  AR 1663.  She both answered questions

4    appropriately during the hearing and was able to remember her address and dates.  AR 1663.

5           Plaintiff also had moderate limitations in concentrating, persisting, or maintaining pace.

6    AR 1663.  The ALJ held that aside from being consistently alert and oriented, Plaintiff can

7    concentrate and maintain pace enough to manage daily tasks and personal hygiene, including

8    cooking on the stove, and to spend four to five hours online per day.  AR 1663.  Doctors have

9    noted normal judgment and no deficits maintaining pace.  AR 1663.

10          The ALJ found only mild limitations in both interacting with others and adapting or

11   managing oneself.  AR 1663.  As to interactions, Plaintiff admitted to spending time with others

12   and having no problems getting along with others.  AR 1663.  She was polite and cooperative at

13   the hearing, responding to answers adequately.  AR 1663.  As to adapting or managing oneself,

14   she admitted to managing personal care and chores without issues and to shopping and going out

15   alone.  AR 1663.  Nor did any medical providers suggest that plaintiff appeared at appointments

16   with deficient hygiene and grooming.  AR 1663.[5]

17          Without a marked or extreme limitation in any area of adaptive functioning, Plaintiff's

18   intellectual disorders were not severe enough to meet the Paragraph B criteria in Appendix I.  The

19   ALJ noted that Plaintiff's IEP reports overall demonstrated "functioning at a much higher level

20   than her scores would otherwise indicate."  AR 1663.  Said scores included a verbal IQ of 72 and

21   assessment measures suggesting low average cognitive ability.  AR 1663 (citing AR 389-95, 516-

22   61).  Dr. Herrera's February 2016 examination, for example, found only mild and moderate

23   limitations in each functional area.  AR 1663 (citing AR 1243, 1250).  During a March 2013

24   examination, Dr. Daivd Richwerger found that despite "an Axis II diagnosis of Borderline

25   _____

26   [5]  Defendant cites prior administrative findings by Dr. P.M. Balson and Dr. Anna Franco, both of
     which found that Plaintiff did not have more than a Moderate limitation in any of the "B" criteria.

27   ECF No. 19 at 5 (citing AR 95, 115).  The ALJ's decision does not cite these opinions until his
     analysis of Plaintiff's residual functional capacity.  AR 1673-74.  The Court cannot affirm an

28   ALJ's decision on grounds the ALJ did not himself rely.  *Molina*, 674 F.3d at 1121.

intellectual functioning", she was only mildly impaired because adaptive behaviors were "higher than one would expect[] given her overall score on the WISC-IV." AR 472, 477-78, 1663.

### 4. Governing Legal Principles

At step three of the sequential evaluation, a finding of disability is compelled where the claimant's impairment or combination of impairments meets or equals an impairment listed in Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). Each Listing sets forth the specific "symptoms, signs, and laboratory findings" which must be established for a claimant's impairment to meet the Listing. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The plaintiff bears the burden of proving that she meets each criteria in the listing for that impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). The burden for this showing is high because the listings in Appendix 1 were "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). The ALJ's findings, however, "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

### 5. The ALJ Did Not Overestimate Plaintiff's Ability to "Understand, Remember, or Apply Information"

Plaintiff argues that the ALJ understated her degree of limitation in understanding, remembering, or applying information. ECF No. 17 at 19.[6] She first notes that she was in special education programs throughout high school, after which she received only a certificate of completion instead of a diploma, and received low or failing grades in college despite special accommodations. *Id.* (citing AR 70-75). Plaintiff then cites the results of one of Dr. Herrerra's examinations, where Plaintiff showed impairments in abstract thinking, judgment, and insight. ECF No. 17 at 19; AR 1254. Plaintiff further argues that her poor memory also caused difficulties in fund of knowledge, concentration, and calculation on the same examination. ECF No. 17 at 19; AR 1253-54. Finally, Plaintiff cites assertions from her own function report that

---

[6] Defendant does not respond to this argument, incorrectly asserting that this is not one of the areas of adaptive functioning that Plaintiff claims the ALJ understated. ECF No. 19 at 4.

1   she forgets things like taking her medication, sometimes does not understand instructions, and

2   struggles to pay attention or stay focused.  ECF No. 17 at 19; AR 255-63.

3       The ALJ noted Plaintiff's testimony regarding her accommodations in community college,

4   and her failure in some classes notwithstanding those accommodations.  AR 1662.  The ALJ also

5   acknowledged Plaintiff's intellectual disorders, occasionally poor memory, and difficulty with

6   complex instructions and remembering spoken ones.  AR 1662-63.  While this contributed to a

7   general finding of "moderate" limitations, the question is whether additional evidence merits a

8   more severe finding.  AR 1662.

9       In this regard, Plaintiff's reliance on Dr. Herrerra's examination results is not persuasive.

10  Plaintiff did exhibit difficulties with tasks involving calculation, like "serial 7s" and making

11  change based on hypothetical transactions.  AR 1254.  However, she was able to count without

12  using her fingers and could overall "follow this portion of the examination well."  AR 1254.  Dr.

13  Hererra did find that Plaintiff's abstract thinking, judgment, and insight were all impaired, but

14  provided almost no detail as to judgment and insight.  AR 1254.  Even as to abstract thinking,

15  Plaintiff gave a reasonable answer regarding the similarities and differences between apples and

16  oranges.  AR 1254.  Dr. Hererra summarized the Mental Status Exam results as "within normal

17  limits" notwithstanding the challenges faced.  AR 1254.  These results do not suggest that

18  Plaintiff's performance is markedly or extremely impaired.  AR 1254.

19      Nor does Plaintiff address any of the evidence the ALJ cites in finding her only

20  moderately limited in this area.  She does not, for example, refute that she followed instructions

21  with 90% accuracy during a 2014 IEP assessment.  AR 529, 1663.  2017 treatment notes also

22  found she had "Fair" insight and judgment, as well as memory.  AR 1620-21, 1663.  Plaintiff

23  does not challenge the ALJ's own observations that she was able to follow the conversation and

24  answer questions appropriately when testifying at the hearing.  AR 1663.

25      The evidence is consistent with a finding that Plaintiff's ability to understand, remember,

26  or apply information "independently, appropriately, effectively, and on a sustained basis is fair."

27  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c).

28  ////

1    6.  The ALJ Did Not Overstate Plaintiff's Ability to "Concentrate, Persist, or Maintain

2        Pace"

3        When finding that Plaintiff is only moderately limited in her ability to concentrate, persist,

4    or maintain pace, the ALJ cited to various daily activities like using a stove, spending time on the

5    internet, playing board games, and completing other household chores.  AR 1663.  Plaintiff notes

6    that she testified she can only make small meals like eggs and hash browns, and her father

7    explained she needs help whenever using the measuring cups.  ECF No. 17 at 18 (citing AR 77,

8    1704, 1719).  Deficiencies in performing calculation-based tasks like using measurements do not

9    suggest an inability to concentrate or maintain pace.  Additionally, even cooking simple meals on

10   a stove, where items are constantly heated and could overcook, requires some degree of

11   concentration to timely remove from the pan and plate.  That she can cook at least some items in

12   this manner suggests that her ability to concentrate, persist, or maintain pace is not "marked."

13       Plaintiff argues that the ALJ also ignored how easily she is distracted and confused, and

14   the fact that she would give bills and cash to her mother because she cannot handle them herself.

15   ECF No. 17 at 20 (citing AR 251, 1245).[7]  To support this argument, Plaintiff only cites a

16   function report completed by her aunt (AR 247-54) and Plaintiff's own summary of daily

17   activities to Dr. Herrera as part of his evaluation (AR 1243-50).  As Defendant notes, the ALJ

18   correctly contrasted this against various treatment notes where doctors consistently found Plaintiff

19   alert, fully oriented, and exhibiting normal judgment throughout their examinations.  ECF No. 19

20   at 4; AR 1663.

21       Plaintiff also cites Dr. Herrerra's conclusion that poor memory has impacted her

22   concentration.  ECF No. 17 at 20 (citing AR 1247).  Both Dr. Herrera and Dr. Richwerger also

23   found her incapable of managing her own funds.  ECF No. 17 at 20 (citing AR 478, 1250).

24       These arguments, however, do not reflect the full context of Dr. Herrera and Dr.

25   Richwerger's statements.  As discussed above, Dr. Herrerra found Plaintiff's Mental Status

26

27   [7]  Plaintiff appears to miscite some pages of the record, referring to the ECF PageID for that page
     of the docket (ECF No. 16) rather than the Bates stamp for the AR.  Compare AR 1251 with AR
28   1245.  The Court will credit the citation as to the intended page when possible.

1  "within normal limits" despite deficiencies in concentration and calculation.  AR 1247, 1254.  He

2  also found no more than a moderate impairment in any area of his functional assessment.  AR

3  1250.  As to Dr. Richwerger, notwithstanding his assertion that Plaintiff cannot manage her own

4  funds, he found only "mild impairment in her ability to have adequate concentration, persistence

5  and pace to engage in sustained activity for a period of time" on the same page of his report.  AR

6  478.  Plaintiff cannot use this report to justify a more severe finding than the "moderate"

7  limitation the ALJ issued.  AR 1663.

8      The cited evidence does not suggest that Plaintiff has a marked or extreme limitation in

9  her ability to concentrate, persist, or maintain pace.

10      7.  Any Overstatement of Plaintiff's Ability to "Adapt and Manage Oneself" is Harmless

11      In finding that Plaintiff is only mildly limited in her ability to adapt and manage oneself,

12  the ALJ stated that she "has no problem with personal care" and "shops, can go out alone, and

13  does household chores" according to her Function Report.  ECF No. 19 at 4; AR 1663 (citing AR

14  255-64).  Plaintiff argues that the ALJ ignored crucial details: That she shops with her parents or

15  friends rather than alone, cannot make change with bills when shopping, prefers using a debit

16  card instead of cash as a result, and calls her father to ask for his help when she does go shopping

17  alone.  ECF No. 17 at 18, 20 (citing AR 74, 1701-02, 1705, 1713, 1716, 1719).  Her parents

18  would also drive her to doctors' appointments, whether waiting in the car or attending the

19  appointments with her.  ECF No. 17 at 20 (citing AR 78).  She further argues that she generally

20  only goes to places where she feels safe, which are never far from home, and does not like to be

21  alone for long.  ECF No. 17 at 19-20 (citing AR 258-59, 261, 1701).

22      While the ALJ erred in ignoring these important details, that error is harmless.  The ALJ

23  found mild or moderate limitations in the other three areas of adaptive functioning.  Plaintiff has

24  not challenged that finding as to interacting with others.  Plaintiff's challenges as to

25  "concentration" and "understanding" fail for the reasons discussed above.  *See supra* VI.A.4-5.

26  Plaintiff's intellectual disorder would therefore only meet the Appendix 1 listing if her limitations

27  in adapting and managing herself are extreme.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §

28  12.05(B)(2).  If those limitations are even moderate or marked, the ALJ's error in only finding it

14

1   mild is "irrelevant to the ALJ's ultimate disability conclusion" and therefore harmless. *See Stout*,

2   454 F.3d at 1055.

3        Some of Plaintiff's arguments do not appear to reflect meaningful practical limitations.

4   Although Plaintiff asserts she struggles to make change and generally handle cash, for example,

5   she admits that using a debit card provides an acceptable workaround when shopping. ECF No.

6   17 at 18; AR 1705. That she can go to nearby places alone after becoming familiar with them

7   also suggests that she can maintain a daily routine to some extent. ECF No. 17 at 19; AR 258.

8   Plaintiff also does not address the ALJ's observation that Plaintiff displayed adequate hygiene

9   and grooming at all medical appointments, regardless of who took her there. ECF No. 19 at 4;

10  AR 1663.

11       Plaintiff's ability to function in various scenarios, with appropriate preparation and some

12  caveats, does not suggest that she has an extreme limitation in her ability to adapt and manage

13  herself. The ALJ's error is therefore immaterial to the ultimate finding at Step Three.

14      8.  Conclusion

15       Plaintiff has failed to demonstrate errors in the ALJ's analysis of her intellectual disorders

16  that would merit a finding of disability at this step.

17      **B. The ALJ Did Not Err in Rejecting Subjective Testimony**

18      1.  Plaintiff Testimony

19       At the 2018 hearing, Plaintiff testified that her parents drive her around since she does not

20  have her own license. AR 53. Plaintiff's certificate of education shows that she completed 230

21  hours of education in school but was exempt from classes like algebra and science. AR 54. She

22  finds reading and writing hard at times but not impossible. AR 54. In the tenth grade, a teacher

23  noted that Plaintiff could read and write at a third-grade level and do math at a second-grade

24  level. AR 71.

25       Plaintiff considered her back pain the biggest physical limitation that prevented her from

26  working. AR 55. She underwent corrective surgery in March 2010 that involved installing a rod

27  in her back. AR 56. After some difficulty understanding the ALJ's questions about symptoms,

28  she explained her pain started in the midsection of her back and radiated to her legs. AR 59-60.

1   Movement exacerbates it, and she only takes aspirin twice a month for it, though she also used to

2   attend physical therapy.  AR 60-61.  Plaintiff can sit for 30 minutes without pain, stand for 20

3   minutes, and lift 5-10 pounds.  AR 64. [8]

4          As to her mental impairment, Plaintiff testified that she used to see a psychiatrist and take

5   medication for depression but no longer did as of the 2018 hearing.  AR 63-64.  She attributes her

6   depression to fetal alcohol syndrome and asserts that it sometimes keeps her from doing anything.

7   AR 76-77.  Part of what keeps her from going out alone is a fear of having to speak properly in

8   public.  AR 77.

9          As of 2018, Plaintiff's typical day consisted of spending time with her three friends by

10  going to the mall, going out to eat, going to a movie, bowling, or taking out-of-town trips.  AR

11  64-65.  Plaintiff cannot drive herself when going shopping, having failed driver's ed in school.

12  AR 75.  Her parents take her to doctor's appointments, either waiting in the car or going in with

13  her.  AR 78.  Whether her friends or her parents take her shopping varies.  AR 78.

14         Plaintiff testified that she read romance and fiction, and could use the computer for Delta

15  College schoolwork twice a week.  AR 65-66, 72.  As of the Spring 2018 hearing, she was taking

16  English and First Aid for a total of eight units, having taken seven in the Fall 2017 semester

17  before dropping a few.  AR 66-69.  Through the "DSPS" program, she received accommodations

18  like a note taker, a recorder, and an extra hour to take two-hour tests.  AR 67.  Despite this, she

19  took the same English class the maximum 3 times allowed, failing the first two times and getting

20  a D on the third.  AR 75-76.

21         Plaintiff's at-home chores include cooking, sweeping, doing the dishes, and cleaning the

22  bathroom counter.  AR 72.  Said cooking involves "basic" items like eggs and hashbrowns.  AR

23  77.  She did work in a thrift store for two weeks but found making change difficult whenever she

24  operated the cash register.  AR 73-74.  She testified that she usually gives any money she gets to

25  her parents to hold onto for her.  AR 74.

26

27  [8]  Because Plaintiff does not challenge the ALJ's decision to discount her testimony as to physical
    impairment (see ECF No. 17 at 21-26), the Court need not further review the medical evidence
28  the ALJ considered as to back pain (AR 1665-68), or Plaintiff's testimony thereon.

At the February 2023 hearing, Plaintiff testified that she had no income of her own, lived with her parents, and still had them take her places. AR 1690. She had not worked since filing the 2015 SSI application. AR 1691. Although her back pain had increased even with ibuprofen, limitations on sitting, standing, walking, and lifting had not changed. AR 1691-93, 1695. As to her mental health, she started taking Prozac for her depression two years before the hearing and started seeing a therapist in 2022. AR 1705-06. The Prozac did not alleviate her condition, but she kept taking it in case it kept her depression from getting worse. AR 1706.

Plaintiff still had difficulty making change and counting money without her parents' help. AR 1701, 1713. She also needed her father's help, either over the phone or in-person, whenever completing a new form at the doctor's office. AR 1713. Between Plaintiff's mental impairment and back pain, she had not even tried finding work for years. AR 1701-02. Her chores, however, included laundry and cleaning her own room, the kitchen, and the bathroom. AR 1703. She still cooked only "simple meals" like eggs, and she would wash the dishes after. AR 1703-04.

Plaintiff also testified that she stopped going to Delta in 2019 because she could not understand the materials, even with all her accommodations. AR 1695. Since then, her days mostly consisted of walking the dog, working on coloring books, and reading. AR 1696-97. The last book she read, however, was two years prior. AR 1697. She also referred to using colored pencils on a picture her sister drew of flowers as "painting" said flowers. AR 1702-03.

After breakfast on a normal day, she watches TV, plays with her dog, spends time with her mother, possibly goes to the store, watches a movie, and goes to bed. AR 1698. She also reported spending 4-5 hours per day on social media, which she uses instead of email to communicate with people. AR 1699.

Plaintiff confirmed she still likes to go bowling on special occasions like with her brother and family, but it had been some time since the last time they bowled. AR 1697. Plaintiff also testified that she liked visiting her aunt in Gover Beach, as well as visiting amusements parks, movie theaters, restaurants, and the community pool. AR 1698-701. If she goes out with friends, her parents will give her money to deposit in the bank so she can pay with her debit card at restaurants or when shopping. AR 1704-05.

1          2.  Corroborating Testimony

2          Plaintiff's father, Frank Castro, also testified at the 2023 hearing.  AR 1714.  He asserted

3    that Plaintiff was always "developmentally delayed" in school.  AR 1715.  Even as of the hearing,

4    she found it hard to understand or comprehend anything she read, complete the task at hand, or

5    understand complex words and concepts without asking her father or stepmother for help.  AR

6    1715.  Although Plaintiff testified to reading a romance novel, she often asks for her parents' help

7    to pronounce words therein.  AR 1716.  Her comprehension issues also cause her to act aloof in

8    larger social settings, unable to join a conversation because it is difficult for her to understand.

9    AR 1720.

10         Mr. Castro also confirmed that he and his wife help Plaintiff manage money and bills.  AR

11   1716.  Even after he showed Plaintiff how to use a calculator to determine the prices of items that

12   are on sale by a certain percentage, she found it difficult to run those calculations herself.  AR

13   1717.  She usually uses the debit card, and Mr. Castro checks that she received the right amount

14   of change when she uses cash instead.  AR 1718.  Similarly, Plaintiff will often ask for help with

15   fractions if she has to use measuring cups or spoons when cooking.  AR 1718-19.  Mr. Castro also

16   tried teaching her how to drive by having her bring a DMV booklet with her when they drive

17   together, but online test scores have shown minimal progress.  AR 1718.

18         When asked about Plaintiff's former job as a cashier, Mr. Castro asserted that she was

19   living with her mother at the time.  AR 1719-20.  Plaintiff still told him, however, that she

20   struggled both to make change at the cash register and to lift things due to back pain.  AR 1720.

21         Overall, the idea of Plaintiff ever living alone makes Mr. Castro nervous.  AR 1721.  He

22   cannot be sure that she would remember things she must do to stay safe, like locking doors,

23   turning the stove off, or unplugging appliances.  AR 1721.  He would still let her try living alone

24   if she so chose because she is an adult.  AR 1721.

25         3.  Holding

26         As to physical impairment, the ALJ found that although Plaintiff had "occasional reports

27   of back pain" throughout her treatment history, she also had a five-year period without complaints

28   ending in December 2022.  AR 1668.  That she only takes over-the-counter medication to treat

18

1    this pain also discredited the assertion that this pain was still severe.  AR 1668.  The RFC still

2    accommodated Plaintiff's "history of back surgery with some residual pain."  AR 1668.

3        As to mental impairment, the ALJ did acknowledge that Dr. Herrerra's January 2016

4    examination found that Plaintiff exhibited confusion, difficulty understanding, and difficulty in

5    completing tasks.  AR 1669 (citing AR 1241-50).  The ALJ concluded, however, that this

6    confusion was not reflected in the longitudinal evidence.  AR 1669.  He first noted that Plaintiff

7    was consistently alert and oriented in all spheres throughout various examinations.  AR 1669

8    (citing, e.g., AR 565, 1314, 1885, 1900, 1923, 1935).  Records since high school also show

9    normal appearance, judgment, thought content, and perception.  AR 1669.  While in school, she

10   followed verbal directions with 90% accuracy, found information on her phone with 95%

11   accuracy, and responded to questions normally.  AR 1669.  She was even able to work in the

12   attendance office.  AR 1669.

13       As to daily activities, she was in cross-country and did well academically while in high

14   school.  AR 1669.  She now spends time with family and friends, bowls, uses a computer, travels

15   to other cities, does chores without reminders, and goes to the mall, restaurants, and movies.  AR

16   1669.  The ALJ contrasted these activities, combined with how articulate and attentive Plaintiff

17   was during her testimony, against the assertions by Plaintiff and Mr. Castro that she finds it hard

18   to understand instructions and finish tasks.  AR 1669.  That Plaintiff pays for things when

19   shopping, whether with cash or debit card, also undercuts the assertion that she cannot make

20   change during such transactions.  AR 1669.  Overall, Plaintiff's impaired intelligence and

21   difficulties understanding did not prevent her from completing daily tasks relevant to self-care.

22   AR 1669-70.

23       4.  Governing Law

24       Evaluating a claimant's subjective testimony is a two-step process.  "First, the ALJ must

25   determine whether the claimant has presented objective medical evidence of an underlying

26   impairment which could reasonably be expected to produce the pain or other symptoms alleged.

27   In this analysis, the claimant is not required to show that her impairment could reasonably be

28   expected to cause the severity of the symptom she has alleged; she need only show that it could

1    reasonably have caused some degree of the symptom." *Garrison v. Colvin*, 759 F.3d 995, 1014

2    (9th Cir. 2014) (citations and quotations omitted).  Objective medical evidence of the pain or

3    fatigue itself is not required.  *Id.*  Second, if the claimant succeeds in providing objective evidence

4    of the impairment and "there is no evidence of malingering," the ALJ cannot reject the claimant's

5    testimony about the severity of such symptoms unless there is "'specific, clear and convincing

6    reasons for doing so.'"  *Id.* at 1014-15 (internal citations omitted).

7         While an ALJ's credibility finding must be properly supported and sufficiently specific to

8    ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective

9    statements, an ALJ is also not "required to believe every allegation" of disability.  *Fair v. Bowen*,

10   885 F.2d 597, 603 (9th Cir. 1989).  So long as substantial evidence supports an ALJ's credibility

11   finding, a court "may not engage in second-guessing."  *Thomas*, 278 F.3d at 958.

12        An ALJ should not penalize claimants "for attempting to lead normal lives in the face of

13   their limitations."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  An ALJ can, however,

14   cite a claimant's daily routine to the extent that it is inconsistent with the degree of disability that

15   plaintiff alleges.  *See Molina*, 674 F.3d at 1113 (even where claimant's everyday activities reflect

16   difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the

17   extent that they contradict claims of a totally debilitating impairment).

18        5.  <u>Plaintiff Fails to Adequately Challenge the ALJ's Analysis of Expert Opinions</u>

19        Plaintiff cites the opinions and examinations of Dr. Richwerger, Dr. Herrera, and therapist

20   Arlene Phipps as supporting her testimony.  ECF No. 17 at 23-24 (citing AR 472-78, 1243-50,

21   1879-81).  The ALJ did, in fact, discuss each of these opinions and assign each its own weight in

22   determining the RFC.  AR 1670-73.

23        In evaluating medical opinion evidence for claims filed before March 27, 2017, an opinion

24   from a treating source receives controlling weight if it "is well-supported by medically acceptable

25   clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

26   evidence" in the record.  20 C.F.R. § 404.1527(c)(2).  If a source is not given controlling weight,

27   the following factors are considered in determining what weight to give that source (1) whether

28   the source personally examined the plaintiff; (2) the treatment relationship the source has with the

20

1    plaintiff; (3) to what extent the source presented "relevant evidence to support a medical opinion,

2    particularly medical signs and laboratory findings[;]" (4) to what extent this opinion is consistent

3    with the rest of the medical record; (5) whether the impairment at issue relates the source's area

4    of specialization; and (6) any other fact that tends to support or contradict the medical opinion,

5    whether brought by a party to the ALJ's attention or considered *sua sponte*.  20 C.F.R. §

6    404.1527(c).  The treatment relationship is evaluated based on the length of the relationship, its

7    nature and extent, and the frequency of examinations.  20 C.F.R. § 404.1527(c)(2)(i)-(ii).

8         Under this framework, the Ninth Circuit distinguishes between treating physicians,

9    examining physicians who do not treat the patient, and nonexamining physicians.  *Lester v.*

10   *Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  A treating doctor's opinion can only be rejected for

11   "'clear and convincing' reasons" when uncontradicted by another opinion.  *Id.* (quoting *Baxter v.*

12   *Sullivan,* 923 F.2d 1391, 1396 (9th Cir.1991)).  When another doctor contradicts the treating

13   doctor's opinion, the ALJ must still articulate "'specific and legitimate reasons' supported by

14   substantial evidence in the record" when rejecting the opinion.  *Lester*, 81 F.3d at 830 (quoting

15   *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983)).  The same applies to the opinion of an

16   examining doctor.  *Lester*, 81 F.3d at 830-31.  In contrast, a nonexamining opinion, even when

17   combined with an ALJ's personal observations of a plaintiff, cannot alone constitute the

18   substantial evidence needed to reject a treating or examining opinion.  *Id.* at 831.

19        The ALJ acknowledged that Dr. Herrerra's consultative examination involved "testing for

20   intelligence, memory, and Trails A and B, and … a complete mental evaluation".  AR 1243,

21   1670.  Dr. Herrerra described Plaintiff's mood as anxious and her affect as expansive, and she

22   admitted to feelings of hopelessness and worthlessness.  AR 1246, 1670.  He also noted

23   impairments in Plaintiff's intelligence, abstract thinking, judgment, and insight.  AR 1246-47,

24   1670.  He based his findings in part on Plaintiff's Full-Scale IQ of 59, Verbal Comprehension IQ

25   of 68, Perceptual Reasoning IQ of 63, Working Memory IQ of 66, and Processing Speed of 65 –

26   all of which were in the "Mildly Mentally Retarded" range.  AR 1248.  Results of the trail-

27   making test, meanwhile, indicated that Plaintiff's overall level of sustained attention, visual

28   search, and psychomotor efficiency functioning were within the significant low average range.

21

1    AR 1249, 1670.

2        The ALJ first noted that Plaintiff's self-reported depression at Dr. Herrera's examination

3    conflicted with other doctors' notes from contemporary visits.  AR 1670 (citing AR 1226, 1234,

4    1443).  The ALJ then found that Dr. Herrera failed to explain what two "judgment items"

5    Plaintiff failed, thereby justifying a finding of impaired judgment.  AR 1670 (citing AR 1247).

6    Nor did Dr. Herera provide any explanation as to how he determined Plaintiff had impaired

7    insight.  AR 1670 (citing AR 1247).  Why the ALJ should prioritize these findings over

8    contemporary notes from Dr. Shi, categorizing Plaintiff's judgment and insight as normal, was

9    unclear.  AR 1670 (citing 1226, 1234, 1339).  Dr. Herrera even admitted that he did not have

10    these records available, which might have better informed his opinion.  AR 1670.

11        Based on these findings, the ALJ reduced the weight given to Dr. Herrera's opinion and

12    did not limit Plaintiff's RFC to reflect "non-severe depression."  AR 1671.  He did, however,

13    credit Dr. Herrera's findings that Plaintiff was mildly impaired in her ability to understand and

14    follow simple instructions, and moderately so "in her ability to maintain regular attendance in the

15    workplace, to perform work activities on a consistent basis, and to complete a normal workday or

16    work week without interruptions resulting from a psychiatric condition."  AR 1671 (citing AR

17    1257).  The RFC consequently limits her to simple, routine, and repetitive tasks and work-related

18    decisions, as well as only occasional changes in a routine work setting.  AR 1671.

19        During a March 2013 consultative examination, Plaintiff's Full-Scale IQ was 55 and in

20    the 0.1 percentile.  AR 476.  Dr. Richwerger characterized all of Plaintiff's WISC-IV scores,

21    including her Full-Scale IQ and her subscores in Verbal Comprehension and Working Memory,

22    as being within the "lower end of the mildly impaired range with global levels of difficulty."  AR

23    476.  Processing speed and working memory were relative strengths, whereas nonverbal skills

24    were a relative weakness.  AR 476, 1671.  At the same time, Dr. Richwerger found that Plaintiff

25    performed better in achievement-related tasks, with Borderline or Low Average scores in the

26    mid-70s and low 80s.  AR 477, 1671.  He therefore characterized Plaintiff's intellectual

27    functioning as Borderline, arguing that her performance on adaptive behaviors was higher than

28    one would expect given her low WISC-IV scores.  AR 477, 1671.

1    The ALJ also noted that Plaintiff's verbal response time during the examination was

2    within normal limits, with clear and rational responses.  AR 475, 1671.  She could understand

3    simple tasks and was euthymic, calm, stable, and cooperative.  AR 475, 1671.  The ALJ therefore

4    credited Dr. Richwerger's opinion to the extent that it suggested Plaintiff was capable of simple

5    tasks.  AR 1671.  He did not, however, agree with any finding that would have suggested a

6    marked impairment in cognitive functioning, an argument the ALJ had rejected in step three.  *See*

7    *supra* VI.A.2; AR 1671.

8    When Ms. Phipps wrote her first opinion in June 2022, she reported that she had been

9    treating Plaintiff for depression, grief and anxiety since July 28, 2021.  AR 1672, 1879.  Plaintiff

10   reportedly needed some explanation as to what questions meant during the session, but she was

11   cooperative and had an unremarkable mood and affect.  AR 1879.  Plaintiff told Ms. Phipps that

12   she was frustrated whenever she could not do what others could easily do.  AR 1879.  Ms. Phipps

13   witnessed this firsthand when Plaintiff was unable to spell names of people or places, or

14   pronounce things properly, and had to call Mr. Castro to answer some questions.  AR 1879-80.

15   Plaintiff also told Ms. Phipps that she had worked at a fast food restaurant, but was fired both for

16   not correctly making change and having difficulty switching between tasks.  AR 1880.

17   Ms. Phipps further reported that Plaintiff was unable to tell the difference between two

18   coins presented to her and their value, read an analog clock, draw one to accurately reflect a

19   specified time, or state the current month and date.  AR 1880.  Her concentration was impaired, as

20   was her recent and remote memory.  AR 1880.  Ms. Phipps concluded that Plaintiff could not

21   make quick decisions or correct change, had deficiencies in sequencing and memory, and could

22   not work independently.  AR 1880-81.  Ms. Phipps reasoned that Plaintiff therefore could not

23   hold a job and was "more than eligible to receive full benefits," but the ALJ noted that those

24   conclusions were within his exclusive purview.  AR 1672, 1881.

25   In January 2023, Ms. Phipps added that Plaintiff would become defensive if her thinking

26   was challenged, even with evidence contrary to her belief.  AR 2004.  Plaintiff still had difficulty

27   making change and recalling recent events about her family, to the point of frustration and giving

28   up.  AR 2004.  Plaintiff also would go to the worst-case scenario when recounting events she did

1    not understand.  AR 2004.  Her overall tolerance for frustration was also low.  AR 2004.

2          The ALJ noted that as a clinical social worker, Ms. Phipps was a non-medical source.  AR

3    1672.  Additionally, despite Ms. Phipps purportedly treating Plaintiff since 2021, the two cited

4    reports were the only treatment notes from her in the record.  AR 1672-73.  The medical evidence

5    that was in the record showed Plaintiff's depression was controlled and mild.  AR 1673.  The ALJ

6    also contrasted Ms. Phipps' allegations that Plaintiff could not tell time against numerous visits

7    where Plaintiff was oriented to date, time and place.  AR 1673.

8          Plaintiff does not address any of the reasons the ALJ provides for discounting the portions

9    of medical and non-medical opinions that Plaintiff now cites.  This failure to do so constitutes

10    waiver of any challenge to these findings.  *See Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998

11    (9th Cir. 2012) ("We review only issues which are argued specifically and distinctly in a party's

12    opening brief") (quotations and citations omitted).  Nor does Plaintiff explain why, as the ALJ

13    noted, none of Ms. Phipps' treatment notes predating her June 2022 opinion are in the record.

14          Additionally, parts of her argument cite to portions of the opinions that the ALJ did credit

15    and the RFC does reflect.  For example, Plaintiff cites how Dr. Richwerger noted borderline

16    intellectual functioning, and Dr. Herrera found she had limited recall.  ECF No. 17 at 23-24

17    (citing AR 472-78, 1243-50).  The ALJ credited both findings by limiting Plaintiff to simple and

18    routine tasks.  AR 1671.  Such arguments therefore cannot justify crediting Plaintiff's testimony

19    to the extent that it would merit a more severe RFC.

20          6.  Plaintiff's Educational History and Cognitive Testing Does Not Support a More

21              Limited RFC

22          Plaintiff argues that the longitudinal evidence shows that she has suffered from

23    intellectual deficits throughout her life.  ECF No. 17 at 22.  A 2009 achievement test, for

24    example, indicated "low average cognitive ability potential," which was still an improvement

25    from her previous "borderline" potential.  *Id.* at 23 (citing AR 357).  She continued to exhibit

26    significant deficiencies in language arts and mathematical calculation through high school.  ECF

27    No. 17 at 23; AR 386-90, 396, 429.  Plaintiff argues that by discounting her testimony, the ALJ

28    effectively ignored these reports in favor of observations that she was alert and oriented during

24

1   physical examinations.  ECF No. 17 at 22.  She cites *Holohan v. Massanari*, to argue that

2   selectively emphasizing portions of the record while excluding other entries to bolster an ALJ's

3   findings is prohibited.  *Id.* (citing 246 F.3d 1195, 1207-08 (9th Cir. 2001)).

4         As Defendant notes, an allegation of cherry-picking sometimes "cuts both ways" because

5   an administrative record will often include evidence that supports both sides.  ECF No. 19 at 7

6   (citing *White v. Comm'r Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009)).  If more than one

7   interpretation of the record is viable, the substantial evidence standard requires deference to the

8   ALJ's interpretation.  ECF No. 19 at 7; *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190,

9   1193 (9th Cir. 2004).  This was not the case in *Holohan*, where the ALJ discounted the latest

10  opinion of the plaintiff's treating physician based on prior findings by other physicians.  246 F.3d

11  at 1207.  One of those physicians only examined the plaintiff once, whereas the other physician's

12  report did not explain why he concluded the plaintiff had no severe impairments.  *Id.*

13        Here, early test results indicated that Plaintiff has cognitive difficulties, and the ALJ's

14  decision to limit the RFC to simple and routine tasks may address that.  AR 1664.  Later tests,

15  however, showed that she could follow verbal directions with 90% accuracy and obtain

16  information on her phone with 95% accuracy.  AR 529, 531, 1669.  Nor are all the observations

17  that Plaintiff was alert and oriented from physical examinations, as she alleges.  *See* AR 1246.

18        To the extent some tests may suggest more severe limits to Plaintiff's cognitive abilities,

19  others suggest less severe limitations.  Plaintiff has failed to show that the ALJ's decision to not

20  prioritize certain findings over others constitutes reversible error.

21        7.  The ALJ Did Not Misinterpret Plaintiff's Daily Activities

22        Plaintiff then argues that in citing her daily activities like reading, surfing the Internet,

23  hanging out with friends, going shopping, and doing chores at home, the ALJ ignores several

24  caveats or limitations that Plaintiff experiences for each activity.  ECF No. 17 at 25.  The ALJ

25  referenced the fact that she goes bowling with family, for example, without considering her

26  testimony that some time elapsed between her last game and the 2023 hearing.  *Id.*; AR 1697.

27  The cooking that she does do is simple, like eggs on the stove.  ECF No. 17 at 25; AR 77, 1704.

28  Plaintiff does travel, but her parents do all the driving and accompany her when shopping.  ECF

1   No. 17 at 25; AR 1698, 1701.  This is in part because Plaintiff cannot make change when

2   shopping, which is also why she uses a debit card.  ECF No. 17 at 25-26; AR 1669, 1703.

3          A plaintiff need not "'vegetate in a dark room'" for her to be disabled.  *See Molina*, 674

4   F.3d at 1112 (internal citations omitted).  At the same time, daily activities can be used to

5   discredit subjective testimony if they reflect capacities transferable to a work setting.  *Id.* at 1113.

6   If the plaintiff is alleging complete debilitation, even activities that reflect some difficulty

7   functioning can discredit such testimony.  *Id.*

8          The question therefore becomes whether the difficulties Plaintiff faces when completing

9   her daily activities justify a more severe RFC than what the ALJ articulates.  Plaintiff has failed to

10  show that this applies here.  For example, the decision implies that her ability to pay for things

11  with a debit card largely offsets the fact that she cannot make change when shopping.  AR 1669.

12  The ALJ still incorporated this limitation into the RFC, despite noting at the 2023 hearing that not

13  every job would require her to make change.  AR 1664, 1701-02.  The time that has elapsed since

14  any one social activity, like bowling, is irrelevant when Plaintiff admits to several others like

15  eating at restaurants, going to the movies, and visiting family on other towns.  AR 64-65, 1698-

16  1701.  More generally, limiting Plaintiff to "simple, routine, and repetitive tasks" and "one to two

17  step instructions" accurately reflects her purported limitations in cooking, her inability to drive,

18  and any other limitation that she now cites from her testimony.  AR 1664.

19         Plaintiff has failed to show that based on her struggles with daily activities, the ALJ

20  should have limited her RFC further than it has.

21         8.  <u>Mr. Castro's Testimony Does Not Affect the Analysis</u>

22         Plaintiff cites to Mr. Castro's testimony corroborating and supplementing various aspects

23  of her own.  ECF No. 17 at 26.  Specifically, he testified that aside from being unable to make

24  change when paying for groceries, she cannot calculate the sale prices of items or use measuring

25  cups in the kitchen without help.  *Id.* (citing AR 1716-17, 1719).  He also testified that as much as

26  she likes to read, she last finished a book two years before the 2023 hearing, and only with a lot

27  of help from Mr. Castro and his wife.  ECF No. 17 at 26 (citing AR 1716).

28         When an ALJ "explains its decision with 'less than ideal clarity,'" courts shall still uphold

1   the decision "if the agency's path may reasonably be discerned." *Molina*, 674 F.3d at 1121

2   (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004) (internal citations

3   omitted)).  Consequently, if an ALJ rejects one witness's testimony for reasons that would be

4   equally germane to another witness's testimony, the court assumes that the reasoning applies to

5   both. *Molina*, 674 F.3d at 1121.  To the extent that Mr. Castro reiterates that Plaintiff cannot

6   make change or perform similar calculations, the above analysis of the ALJ's response –

7   including the inclusion of limitations into the RFC – remains valid.  *See supra* VI.B.7; AR 1664.

8        The RFC also acknowledges Plaintiff's comprehension difficulties to the extent that the

9   medical record supports them.  As discussed above, Dr. Herrera found that all of Plaintiff's IQ

10   scores, including for Verbal Comprehension, were in the "Mildly Mentally Retarded" range. *See*

11   *supra* VI.B.5; AR 1248, 1670.  The ALJ credited this to the extent that it limited Plaintiff to

12   understanding and carrying out "simple and routine tasks" and "simple one to two step

13   instructions," both of which are incorporated into the RFC. AR 1664, 1671.  Whether Plaintiff's

14   comprehension difficulties imply that she cannot follow even simple instructions, or justify any

15   further restrictions, is unclear.

16        Mr. Castro's testimony does not add further credence to Plaintiff's testimony, to the extent

17   that the ALJ chose to disbelieve it.

18                                 VII.  CONCLUSION

19        For the reasons set forth above, IT IS HEREBY ORDERED that:

20        1.  Plaintiff's motion for summary judgment (ECF No. 17) is DENEID;

21        2.  The Commissioner's cross-motion for summary judgment (ECF No. 19) is

22              GRANTED;

23        3.  The Commissioner's final decision in this matter is AFFIRMED; and

24        4.  The Clerk of the Court shall enter judgment for Defendant and close this case.

25   DATED: September 16, 2025

26

27

28
                                  SEAN C. RIORDAN
                                  UNITED STATES MAGISTRATE JUDGE